Thank you. We'll now call DeJesus v. Perez. Mr. Edelstein. Mr. Edelstein, are you there? Yes, good morning, Your Honors. Can you hear me now? Yes. Okay, thank you. My name is Jonathan Edelstein. I represent the petitioner-appellant Josue DeJesus. In this case, the prosecutor conveyed to the jury, inferentially but clearly, that a second person, other than the sole eyewitness, Latin Carrasco, had made a statement identifying Mr. DeJesus as the shooter. And as Magistrate Judge Pittman pointed out, the prosecutor made that point very clear to the jury through repeated references to people and witnesses in the plural during her opening statement and summation. Both the Magistrate Judge and the District Court rejected Mr. DeJesus' petition on the basis that the Supreme Court has never explicitly held that inferentially conveyed statements are within the scope of conflated the contrary to and unreasonable application prongs of Section 2254. The contrary to prong does require a Supreme Court precedent directly and explicitly on point, but as was held in Yarborough v. Alvarado, the unreasonable application prong can involve a more general rule. And here, the relevant Supreme Court cases, the two lines of cases at issue, the Crawford and the Bruton lines, apply to statements, and the Court has not cabined that precedent to any particular means of delivery of those statements. The Crawford line of cases has never excluded inferentially conveyed statements from the category of statements that fall under confrontation clause, and the Bruton line of cases does specifically include accusatory statements conveyed by inference. There is, at the very least, a general rule regarding statements from which inferential statements have never been excluded. What we have in this case is an accusatory statement which, while not presented to the jury with quotation marks and while not attributed to a source, was made clear to the jury. The jury heard that Mr. Carrasco didn't identify the petitioner until after 7 p.m., that methods of identification such as canvassing and searching for surveillance footage had proven fruitless. But nevertheless, the police knew that Mr. DeJesus was a suspect by about 4 o'clock. The prosecutor didn't have to draw the jury a picture. It's clear that somebody contacted the police and gave them Mr. DeJesus' name. We submit that the fact pattern of this case is quite similar to Ryan and Ocampo cases cited in the briefs. Now, whether or not those cases can be relied upon by this Court as precedent, we think they can for the reasons stated in the brief and in the reply brief. We would submit that an analysis of the precedents, the Supreme Court precedents that were at issue in Ryan and Ocampo would lead this Court to a conclusion, to the same conclusion that the Ryan and Ocampo courts made, that Mr. DeJesus' confrontation right was violated and that he should be granted the writ and entitled to a new trial. All right. Thank you. Judge Calabresi? Yeah. My problem is I'm willing to assume that Ryan covers it and our cases cover it. And I'm willing to assume that we would hold that this violated the confrontation clause. But I have not allowed to do that unless they have done it themselves. And I don't really see that the Supreme Court has ruled this issue. And that's my problem. That is, I'm very sympathetic to the argument you're making, but I'm having trouble seeing how the Supreme Court has already ruled on it. And I'd like you to say more about that because that's my problem. Well, my argument is that in Yarbrough v. Alvarado, the Supreme Court held that its precedents that can be unreasonably applied can be of varying levels of generality. That where a rule is more general, a court is afforded, you know, state courts are afforded more leeway in interpreting it, but they still have to follow even the general rules. And I would submit that does not require that the Supreme Court explicitly say that on these facts or on these specific kind of facts, the confrontation clause has been violated. I don't think that level of specificity is required in order to grant the writ. I would submit that under Yarbrough, you could cite a more general rule, namely the rule in Crawford or the rule in Bruton that, you know, testimonial statements or accusatory statements are within the scope of the clause and apply that to statements in general, regardless of whether those statements are conveyed to the jury by inference or explicitly. And I would also point out, as we have in the briefs, that the Gray case, which is one of the Bruton line of cases, did state that an accusatory statement is no less accusatory for being conveyed by inference, and that where an based on the totality of the police officer's testimony, that they knew Mr. DeJesus was a suspect by four o'clock, but all other means of investigating had proven fruitless by that time, that this would fall within the precedence, even if there is not a Supreme Court case that involves a statement precisely like this one. Thank you. Judge Wesley? I have no questions. Thank you. I just want to follow up on some of Judge Calabresi's questions. Even assuming Ryan accurately states clearly established federal law for purposes of habeas, in Ryan, what we said was the relevant question was whether the way the prosecutor solicited the testimony made the source and content of the conversation clear. I'm highlighting the source and content of the conversation clear. So even under Ryan, what you're asking us to do is not only an extension of the Supreme Court, well, it's an extension of Ryan. In Ryan, the source and the content of the conversation was clear because the co-defendant was in the next room, whereas here, there is no, we don't know, the jury wasn't told who the source was of this information or the content. So isn't this even beyond Ryan? Well, I would submit that the source of the statement was not really unnecessary to the Ryan holding because really what was at issue in Ryan was that there was an accusatory statement that whose content was conveyed to the jury, at least by inference. And I don't think that it matters, certainly not under Crawford, whether which was decided after the Ryan case. It doesn't matter under Crawford whether the statement came from a co-defendant, from another suspect, from an anonymous caller, or from Mary Jane. What matters is that the content of the statement was an accusatory statement. And here, even if the source was not made clear, the content is made clear. I just want to ask you that because the content was really made clear during the cross of Detective Rivera when the defense lawyer elicited a lot of information about this second person identifying your client. Up until that point, it was in the direct testimony of Detective Rivera, who was, I think, the first witness to discuss this. All he said was that they had information that your client was the suspect before they saw Carrasco. So at that point, before the cross, it was a very generalized that your client was the suspect. And that could be from a lot of sources. I know you're saying, well, they did canvassing, but they could have gotten that information in so many different ways from so many different sources that you can't like Gray or Ryan, where the source was in the next room. Well, if they had another source, Your Honor, I mean, that could have, well, first of all, going to the issue of the defense cross examination, that happened after the horse had already escaped the barn. By that time, it had already been brought out in direct that the police knew that Mr. DeJesus was a suspect by 4 o'clock before he was identified by Lennon Carrasco. And at that point, the defense council had to work within that and to try and mitigate it. You could have been a suspect. You could have been a suspect for a million reasons other than a second person ID. It could have been you were there. There was a rumor that he didn't like the victim. There could be all types of vague information that the police get that makes someone a person of interest that would not rise to the on the cross. Well, the police on the officers on direct didn't testify to any such other source of information. I mean, if the officer had testified, well, I heard a rumor on the street that he was the shooter or, you know, I heard a rumor he didn't like the guy or I talked to the bartender and he gave me the names of all of the people who were there. And, you know, I was going through them one by one. You know, then I think this would be a different case. I don't think we would be here if there had been information. Every time the police said, you know, this person was a person of interest and then, you know, did X, Y or Z. That would be a confrontation cause problem, right? Under your theory of the confrontation cause jurisprudence. Yes, I think it would be a problem, your honor. I think that, you know, for an officer is simply to throw out there this person was a suspect without providing some kind of a source by which this person was a suspect is going to convey to the jury that, you know, they had specific information, you know, not just rumors, not, not, not just seeing someone at the scene that they had specific information. Suspect is a loaded word, your honor. If a police officer testifies at four o'clock, he's a suspect that conveys a lot more to the jury than, oh, somebody might've seen him leaving the bar. Um, so yes, I would submit to me. I apologize, your honor. No, that's okay. I, I, good. You can finish. Oh, I'm, I'm finished, your honor. I just, again, because this is a habeas case. Give me any Supreme court case or even a second circuit case where the source and the violation was found and the Supreme court case or any second circuit case. Um, I would submit that, you know, that this does fall within Ryan. I mean, I understand that Ryan, the source was identified, but I would submit for the reasons stated before, you know, Ryan was decided prior to Crawford and Crawford, I think makes clear that the source is not a material element. So I would say the combination of Ryan and, and the Crawford line of cases. And then I would also submit to the court's consideration, the ninth circuit decision in El Campo. All right. Thank you very much, Mr. Edelstein. Okay. Ms. Wiseman. Good morning. May it please the court. My name is Alice Wiseman. I'm appearing on behalf of the respondent. Um, I have to start out by apologizing. I'm kind of losing my voice right now. So obviously I hope the court will let me know if you can't hear me. Um, your honors, the people did not elicit evidence trial in this case regarding any testimonial out-of-court statement made by a non-testifying witness as those terms have been used by the Supreme court of the United States. That's what the court of New York court of appeals found. And so for the petition to prevail here, this court would have to determine not all, that the court of appeals was wrong until finding, but that it was so wrong that his decision was objectively unreasonable beyond the possibility for fair-minded disagreement. But in fact, as a district court here recognized a petitioner can establish neither of those things. The actual testimony elicited by the prosecution here, as I think it's been established, doesn't contain a statement of an out-of-court declarant at all. Um, it doesn't repeat any out-of-story court statement or really any statement at all. Other than the fact that for unspecified reasons, the petitioner was a suspect, but in every case where the Supreme court has considered whether testimony, excuse me, whether testimony is improperly recounting an out-of-court testimonial statement in there is an actual out-of-court statement from a specific non-testifying witness that is put before the jury. Whether it is the non-testifying witness saying, this is what the defendant did to me or saying, he tested, excuse me, tested a substance and decided, concluded it was marijuana. Even in Bruton and Gray, um, leaving aside the fact that the primary concern in that line of cases was the jurors would be unable to disregard the uniquely powerful effect of an out-of-court accusation made by a non-testifying co-defendant. Excuse me, you have one more minute. Uh, the relevant testimony was that the co-defendant had said something specific about the crime and how it was carried out. We don't have anything like that here. Um, and although we may think we know in terms of what the people brought out, that there was a man on this phone call that another witness ID'd him. The jury doesn't know that. It knows that the police consider him a suspect. It also knows that the police didn't take any action to reach out and locate Petitioner until after Carrasco had picked him out in a photo array at 10 p.m. And that tells the jury that whatever it was that led the police to see him as a suspect, it was not an identification like Carrasco's and it wasn't something sufficient for them to act on. So under the circumstances, uh, to say this type of testimony could inferentially violate the Confrontation Clause is an enormous step beyond either the Crawford or the Bruton line of Ron Ryan v. Miller. Um, now Petitioner says that Gray established that inferential violation of the Confrontation Clause is possible. Uh, but in that case, again, very unusual circumstances, the court acknowledged that Richardson had placed statements that incriminate inferentially outside the scope of Bruton. Um, but it found that the way that the statement was redacted in Gray and there was a detailed statement where they basically just took out the defendant's name and replaced it with the word blank or deleted, um, you know, it was manifestly clear on its face that he was talking about the defendant, especially because the prosecutor then asked the detective who had recounted that confession, after he gave you that information, you were able to arrest Gray, correct? So by contrast here, to arrive at any, uh, belief that there was an out-of-court statement that Drew would have had to speculate the identity of the speaker, the content of the statement, and even the fact it was a statement at all. Um, especially since it knew, unlike Gray, that the police did not act on that basis. Um, I also just want to point out that the court itself and Ryan explicitly recognized it was extending the Bruton line of cases, uh, referring to, uh, Second Circuit precedent that habeas review is available if the state decision unreasonably failed to extend a clearly established Supreme Court-defined legal principle. Uh, but in a decade and a half since Ryan, the Supreme Court has repeatedly made clear that that is not the rule, that is not the requirement. All right, uh, I think your initial time is up, so I'm going to pass the question to Judge Kyle Bricey. Yes, I, I hope I heard you completely. I'm not completely sure about the theory. If you're weak-voiced, I may have missed some things. Uh, but, uh, I, let's assume that the Supreme Court has never ruled directly on this issue. Uh, would you concede that if we were allowed to decide the question ourselves for the first time, that we were permitted to do that, even if the Supreme Court did not, that the whole line of cases dealing with, starting with Crawford and so on, at the Supreme Court would lead a court to say that this was a violation of a confrontation clause? I'm not saying we can do that. That may be important, though, because we are allowed under Supreme Court rulings to say how we would come out, even though we can't come out that way unless the Supreme Court has said so. So, I'm just curious about that. Uh, no, Your Honor, I would not agree that that would be, um, an appropriate decision, even if you were permitted, um, to rule in that way. I think all of the Crawford line of cases and, you know, the Supreme Court, as you know, is not given a definitive, um, universe of statements that are testimonial, but it has certainly, uh, focused on statements that are statements, statements that are formal statements. Um, it may be, I would say that Ryan v. Miller, um, might be the so-called logical next step in Supreme Court precedent, but again, the Supreme Court itself has specifically said you cannot take the logical next step. This case is very different from Ryan v. Miller because, again, there, there is not only no statement, but there is no implication that there was a statement until the defendant, the petitioner himself brought it out on cross-examination that somebody had identified him. Uh, there really are any number of ways that someone might become a suspect, uh, again, to a degree where we know here that the police did not act on it until they had an identification. Um, so I do think that would, you know, I, I'm not going to predict what the Supreme Court would or will do if it is presented with an inferential, uh, case of inferential confrontation clause violation, but I'm, I'm not at all sure that they would find it permissible at all. Um, they were obviously reluctant to do that even in gray. Um, um, my voice is running out. So if that does not answer your question, thank you. That's my only question. Thank you. Judge Wesley, I'm interested, but I'm not asking. So I'll save your voice. Go ahead. I just, I obviously, uh, you can tell from my questioning of Mr. Edelstein that I think there's a problem, uh, with the lack of, um, Supreme Court law or second circuit law for this extension. But I have to tell you, when I looked at, um, the opening statement and the closing statement, as I think the magistrate judges were troubling, uh, it does seem that having been precluded from going into any details of this anonymous call that the ADA was trying to imply that there was another witness out there. Um, and just to go back to judge Calabrese's point, if in fact that's what's going on, why isn't that, even if it's an extension of burden, why isn't that problematic? If that's in fact what was going on, I just want to read you, this is page one 29 of the record. This is the opening statement. Unfortunately, you won't be hearing from all the witnesses that were out on the street that night that watched the defendant kill Julio Montez for various reasons. They won't take the witness stand, but you will hear from at least one witness. At least one person will take the witness stand and tell you that he saw the defendant shoot and kill Julio Montez and then mentions Carrasco. So the ADA was clearly, uh, implying that there were other people out there for whatever reason, we're not going to testify. So why isn't that problematic? Judge, um, I don't, I mean, obviously there's things about this case that I would wish were done differently, but I think if we look at the case as a whole, which is 2000 pages of testimony, 63 pages of summation, this is not what the jury would have taken away from that. Particularly in that opening statement, what you read, you know, the prosecutor is giving a, a preview of what the evidence is going to show and what the witnesses are going to be. And one of the things she's saying and what is indisputably true is that, um, this shooting took place on a street corner in front of a crowd of people. And it is not inappropriate to call those people witnesses because those people witnessed what happened. And our position obviously is that what happened was a petitioner who shot this man. And that is what they would have seen. I don't think that statement suggests anything other than there were a crowd of people there. You're only going to hear from one of them, um, for indeed various reasons, uh, like, you know, they became unavailable. And again, there's hundreds of pages of testimony about what happened to other people. But, um, you know, also she refers, I think the petitioner complained in his briefs and references to saying, well, he, you know, he shot, he shot, um, uh, the victim in front of a crowd of witnesses or something of that nature. But again, she's only saying that to explain why there is probative force to the consciousness of guilt evidence that he then fled the he knew that he shot it. He did it in front of a crowd of people. Um, so I think the prosecutor's motivation in making these statements here, and I noticed none of this was objected to. And I think that's because at the time it didn't sound like, you know, the trial hadn't happened yet. It didn't sound like the prosecutor is trying to convey that there are other non-justifying witnesses. She's just trying to give a flavor of what happened here. Uh, I don't know. I've never really heard a prosecutor say, well, you'll hear at least one witness. If in fact the prosecutor knew there was only going to be one that there are other ones, that would be an unusual thing to do. I don't know. I haven't gone. I did see that was referencing the record that there was someone else who was going to potentially going to testify. So maybe that was done in good faith, but I mean, I, you know, obviously this is an extra record, but I do believe that's the case. And I think we do sometimes say that if we, you know, we know we've got one with our hands on one but we're not.